# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

**UNITED STATES OF AMERICA**

V.                                                                          CASE NO. 5:23-MJ-5387-MAS

**IBRAHIM A. QASIM**

*****

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Roger J. Kimmel, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Secret Service ("USSS"), and have been since September 2002. I graduated from the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and the USSS Special Agent Academy in Beltsville, Maryland. Prior to joining the USSS, I was an Intelligence Officer in the United States Marine Corps for four years. I have a Bachelor's Degree in Political Science with a minor/emphasis in Criminology. I am a law enforcement officer as that term is used in Federal Rule of Criminal Procedure 41 and am currently assigned to the Lexington, Kentucky Resident Office. My duties include investigating violations of federal laws constituting financial crimes.

2. This affidavit is being submitted in support of a criminal complaint. For the reasons set forth below, I respectfully submit that this affidavit contains probable cause to believe that **IBRAHIM A. QASIM** has committed violations of 18 U.S.C. §§ 1349 (Conspiracy to Commit

Wire Fraud), 1956 (Money Laundering and Conspiracy to Commit Money Laundering), and 1957 (Transactional Money Laundering). I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information communicated or reported to me during the investigation by other participants in the investigation. This affidavit is intended to show only that there is probable cause to support the complaint for the requested arrest warrant. This affidavit does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

3. The investigation in this case has identified a network that engages in a complex scheme centered on the fictitious sale of expensive, luxury vehicles that are neither owned nor in the possession of the individual(s) attempting to sell them. Here, on numerous occasions, the perpetrators reached out over the phone or internet to luxury car dealerships throughout the United States using various aliases, and requested to speak with a sales associate or manager. The perpetrators presented themselves as employees of another legitimate luxury car dealership and offered luxury vehicles for sale. The perpetrator provided pictures of and titles for the vehicles in question, as well as the dealership license of their represented "employer." If an agreement was reached to purchase the vehicles, the perpetrator then provided bank account information to receive the victim funds, including for bank accounts located in the Eastern District of Kentucky. In a number of verified instances, the perpetrators successfully convinced a dealer to wire funds to a bank account for a vehicle that was never provided. In some cases, the victim dealerships were able to uncover the fraudulent scheme in time to freeze the provided funds and prevent any subsequent movement or loss. However, in other instances, the illicit funds were quickly removed from the recipient account and never recovered.

4. As part of the scheme, the perpetrators also purported to attempt to purchase luxury

cars advertised by the victim dealership. During this discourse, the victim dealership would often provide pictures and documentation (i.e., title and dealership license) for the vehicles in question. The perpetrators then had pictures and documents to use to commit fraud against new victims in the future.

5. The investigative team identified the most recent victim dealership located in Austin, Texas (herein after "MBA"). On November 15, 2023, a salesman using the name "Michael Armstrong", who claimed to work for a dealership based in Greenwich, CT (herein after "MMC"), had contacted MBA interested in a vehicle trade. Initial contact took place via the dealership's online communications platform, which allows for outside entities to request additional information and submit prospective offers which are ultimately distributed to the sales staff. Specifically, Armstrong was seeking to trade a 2014 Ferrari for a 2015 Mercedes SLS currently owned by MBA. On or about November 17, 2023, an agreement was ultimately reached whereby MBA and MMC would trade the aforementioned vehicles. As part of that sale, MBA would ultimately pay Armstrong $2,510,110.00. To receive payment, Armstrong emailed wiring instructions indicating the $2,510,110.00 payment should be sent to Community Trust Bank account *6850. On November 22, 2023, MBA sent the $2,510,110.00 wire.

6. According to the general sales manager of MBA, as part of the purchase and sale agreement, MBA was to take possession of the Ferrari on or about November 28, 2023. Leading up to the anticipated retrieval of the vehicle, Armstrong had relayed to MBA that there were issues with the wired payment, as he claimed it had yet to be received. Upon interviewing officials from Community Trust Bank and reviewing Community Trust Bank records related to account *6850, this was false. It is likely this was an attempt to prolong the ongoing criminal scheme and provide additional time for co-conspirators to retrieve and disperse the illicit proceeds. Ultimately, on

3

November 28, 2023, a delivery truck dispatched by MBA to retrieve the 2014 Ferrari arrived at the MMC facility. MMC representatives confirmed ownership of the vehicle in question but stated they did not employ a "Michael Armstrong" who solicited the sale of the vehicle. Moreover, MMC representatives purported this was not the first instance someone had represented himself as an employee of their business and tricked another dealership into such a purchase.

7. Records from Community Trust Bank showed the *6850 account was registered to the business Bougie Zone, LLC and listed Ibrahim QASIM as the only individual with signatory authority. The account was opened and maintained in the Eastern District of Kentucky. Accordingly, the wire transfer from MBA constituted an interstate wire. Additional research further confirmed Bougie Zone, LLC was a registered business within the Commonwealth of Kentucky. State records also identified QASIM as the registered agent for the business which was created on May 12, 2023.

8. Records further indicated the Community Trust Bank account *6850 was opened on October 31, 2023, and done so at the Community Trust Bank "Beaumont Branch" located at 901 Beaumont Centre Parkway in Lexington. The manager of the Beaumont Branch purported that when opening the account, QASIM described his Bougie Zone business as a high-end home renovation business. Moreover, QASIM purported the need to open and establish the account due to the fact that he anticipated an incoming wire around $2.5 million. On the same date at the Beaumont Branch, QASIM opened a personal account with Community Trust Bank, with account number *6868.

9. Review of the Community Trust Bank records demonstrated that accounts *6850 (Bougie Zone) and *6868 (QASIM) had little to no financial activity from the time of their opening until their receipt and handling of the fraudulent funds provided by MBA. Specifically, records

4

confirmed MBA's wiring of to the Community Trust Bank account $2,510,110 on November 22, 2023. Once received on November 22, 2023, approximately $2,499,849.55 was electronically transferred from the Community Trust *6850 account to the Community Trust Bank Account *6868 by way of 25 internal cash management transfers that were initiated via internet banking. These transfers were conducted remotely, were all close to $100,000 respectively, and all took place on the same day.

10. On November 24, 2023, utilizing a debit card associated with the *6850 account, two attempts were made for purchases at the Apple Store believed to be located at 4078 Fritz Farm, Suite 120 in Lexington for $9900 and $4900, respectively. Both transactions were ultimately declined, however, as they exceeded pre-established one-time spending limits assigned to the account. Later that same day, QASIM entered the Beaumont Branch in Lexington and requested a withdrawal of the *6868 account in the form of 11 separate cashier's checks totaling approximately $2,480,000. Given the circumstances of the source of the funds, Community Trust Bank officials asked QASIM why a home-remodeling business would be receiving payment from another business that appeared to be in the auto sales industry. QASIM informed MT his client was very secretive, but his business was involved in the remodeling of a car dealership on Richmond Road. In the process of requesting the checks, QASIM made a phone call in front of the Community Trust Bank official. Speaking in a foreign language, QASIM appeared to be obtaining the names to whom the cashier's checks were to be issued.

11. QASIM is regularly working and coordinating with other individuals in furtherance of the fraudulent scheme. As described, contact with the victim dealerships took place over multiple electronic mediums including email. The investigative team identified three specific email addresses utilized by the individual(s) posing as interested sales associates all of

5

which were Google accounts. Through valid legal process, Google provided records for each account including all historical IP address activity. A review of those records demonstrated an frequent use of IP addresses that resolved to the Amman, Jordan region for all identified accounts. Additional analysis of personal bank accounts registered to QASIM demonstrated his travel and presence in the Jordan area in February 2023.

12. Additionally, financial analysis of the illicit proceeds initially received by QASIM show that QASIM paid other individuals from the proceeds of the fraud. As previously described, the most recent receipt of criminal funds resulted in the creation of eleven cashier's checks which were issued to three other individuals or entities aside from QASIM. This pattern of disbursement was common in each fraudulent instance whereby the illicit funds were quickly disbursed to other individuals or businesses aside from QASIM. One particular business was identified by the investigative team as receiving a portion of the criminal funds in all of the described instances. This pattern of behavior substantiates QASIM's utilization of others in the obfuscation and movement of the illicit proceeds.

13. Upon the provision of the checks, bank representatives informed QASIM his accounts were to be closed and the remaining balances remitted to his possession. QASIM purportedly provided no notable reaction and requested the remaining funds (totaling around $30,000) be provided in fiat currency.

14. In addition to the events described above, the investigation has identified a number of similar incidents dating back to July 2022, whereby the same exact scheme has been attempted on luxury auto dealerships. At least two victims have been identified, who confirmed falling victim to the same fraudulent scheme and wired payments for vehicles that were never provided to bank accounts registered to QASIM or were business accounts where he held signatory

authority. In instances where the money was not recovered, as described above, financial analysis of these records demonstrated the fraudulent proceeds were swiftly transferred to other accounts and dispersed by varying methods.

15. A summary of two of these incidents are as follows:

    a. In January 2023, victim "CAG", a car dealership operating out of Tennessee, received an unsolicited phone call from an individual utilizing the alias, "Sam Zarnigihan". "Zarnigihan" represented himself as an employee of Porsche Cincinnati Kings in Ohio and offered the sale of a Porsche 911 Turbo and a Lamborghini Huracan. The discussions between "Zarnigihan" and the pre-owned car manager at CAG (herein "TM") took place over the course of several days and took place both telephonically and via email. After an agreement was reached for CAG to purchase both vehicles, "Zarnigihan" provided wiring instructions to TM requesting CAG wire the payment to "Zarnigihan" via his Fifth Third Bank Account *2243. Ultimately, payment for the vehicles was provided by CAG in the form of two separate wires for $372,500 and $232,930, respectively. After discovery of the fraud when no vehicle was received by CAG, attempts to freeze and reclaim the previously sent wires were unsuccessful as the funds had already been released to the account holder(s) and had quickly been moved. Through valid legal process, Fifth Third provided account records for the *2243 bank account which was in the name of Lux Motors LLC. Additional account records identified the sole owner of the company as Ibrahim QASIM. An analysis of the account confirmed its respective receipt of the two wire transfers sent from CAG (i.e., $372,500 on January 31, 2023, and $232,930 on February 01, 2023). On the same

days the wires were received, the monies were transferred in their entirety to Fifth Third Bank account *1310. Through valid legal process, Fifth Third also provided records from the *1310 account, which was also in the name of Ibrahim QASIM with a listed address in Lexington, KY. Analysis determined once receiving the respective transfers of the illicit funds to the *1310 account, QASIM quickly sought to convert the funds into multiple cashier's checks which written out to various entities. Fifth Third records indicated at least a portion of these checks were issued in a Fifth Third branch located within the Eastern District of Kentucky.

b. Around April 13, 2023, "DCM", an auto dealership of Portland, Oregon, received an unsolicited phone call from an individual who identified himself as "Samuel Riley" and presented as a salesman for the Ohio dealership Enthusiast Auto Group. "Riley" informed DCM he was interested in purchasing a BMW M3 that was being advertised by DCM. As their discussion around the purchase of the M3 progressed, "Riley" subsequently offered to sell DCM a Lamborghini Huracan. DCM wired $350,000 to City National Bank Account *2262 for the purchase of a Lamborghini Huracan STO. After repeatedly requesting the physical title of the purchased vehicle, DCM ultimately contacted Enthusiast Auto Group of Cincinnati whereby they were informed the sale was fraudulent and their communications were with an individual who was not employed by their dealership. Through valid legal process, City National Bank provided records indicating the *2262 account was registered to Lux Motors, LLC and listed QASIM as the sole individual with signatory authority. Similar to the aforementioned incidents, the fraudulent proceeds were quickly transferred from the *2262 account to another City National Bank account

also determined to be in QASIM's name before being ultimately converted to multiple cashier's checks. Members of City National Bank were ultimately able to locate and freeze approximately $175,000 of the stolen proceeds and return them to the victim dealership.

## CONCLUSION

16. I believe that the facts set forth above support that there is probable cause to believe that in or about November of 2023, in the Eastern District of Kentucky and elsewhere, IBRAHIM A. QASIM has committed violations of 18 U.S.C. § 1349 (conspiracy to commit wire fraud), 18 U.S.C. § 1956 (money laundering and conspiracy to commit money laundering), and 18 U.S.C. § 1957 (transactional money laundering).

WHEREFORE, your Affiant respectfully requests that the Court issue a warrant for the arrest of IBRAHIM A. QASIM.

Respectfully submitted,

/s/ Rover J. Kimmel
Roger J. Kimmel
Special Agent
United States Secret Service

Attested by affiant by reliable electronic means per FRCrP 4.1 on this 1st day of December, 2023.

_____
HONORABLE MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE